Shreve *v.* Shreve.

---

STACY B. SHREVE and others, appellants, and ELIZABETH SHREVE and others, respondents.

1. Every devise of real estate is, in its nature, specific; but this rule does not apply to a term of years embraced in a general residuary clause. Under such circumstances, such term will be put on the foot of personalty with regard to the payment of debts.

2. The first provision of a will was a direction to the executors to pay off all debts. Among other gifts, the testator gave to his daughter-in-law the sole and exclusive use of all the rents and profits of a certain farm, known as "the Biddle farm," to be held by her from the time of his decease until the 25th March, immediately preceding the time when his grandson J. S. should arrive at twenty-one, with a proviso that the daughter-in-law should release to his executors, all claims she might have against his estate. From the 25th day of March, before designated, the Biddle farm was de vised to testator's two grandsons. By a residuary clause, the testator gave all the residue and remainder of his estate (undisposed of) to his four

daughters, subject (in the language of the will) " only to the payment of all just claims against me on note or book account, funeral charges, testamentary and incidental expenses, and commissions." The estate was indebted to the daughter-in-law by bond, in the sum of $5000, which she refused to release, and consequently did not take the term in the Biddle farm left to her, *held*—

*First.* That the term in the Biddle farm was not specially appropriated to the payment of the debt due to the daughter-in-law.

*Second.* That this term passed under the residuary clause of the will.

*Third.* That, in the payment of debts, it was to be considered as a part of the personal estate, and, by the terms of the residuary clause, was made subject to the simple contract debts.

3. As a general rule, a direction by a testator that all his debts shall be paid, will serve to charge such debts on the realty. But where the direction is that the *executors* shall pay such debts, such effect will not be produced.

4. A debt due by specialty is, *proprio vigore*, a burden, equally, upon specific legacies and lands devised.

The controversy in this case, related to the proper construction of the last will of James Shreve, deceased.

The will was dated August 23d, 1852. The testator left four daughters, two grandsons, (children of a deceased son,) his deceased son's widow, and his own wife, and made them the devisees of all his property. The first provision of the will is a direction to the executors to pay off and discharge all his debts. He gives then to his wife, during her natural life, the sole and exclusive use of all his plate, books, household goods and furniture, and he gives to her at her disposal, absolutely, all the groceries, meat, and provisions in his house at the time of his death. To his daughter-in-law, he devises the sole and exclusive use and occupancy of all the rents, issues, and profits of the farm, known as the " Biddle farm," including a small lot thereunto adjoining, to be held and enjoyed by her from the time of his decease until the 25th March, immediately preceding the time when his grandson, James Shreve, should arrive at the age of twenty-one years, with the proviso, and upon condition, that his said daughter-in-law should, within three months after his decease,

execute and deliver to his executors a full and absolute re-
lease and discharge of all claims and demands she might have
against his estate. To his two grandsons, from the said 25th
day of March, immediately preceding the majority of his
grandson, James, he gives the Biddle farm, as joint tenants,
with remainder to their issue in fee, and in default of issue,
to the right heirs of the testator. He also gives to his
grandsons one-third part of his pine lands and cedar swamps.
To his four daughters, the testator gives his homestead farm
and two-thirds of his pine lands and cedar swamps, and an
estate of the same character as that devised to his grandsons.
He then devises and bequeaths to his four daughters, and
their heirs and assigns forever, all the rest, residue, and re-
mainder of his estate, wheresoever the same may be found, to
be equally divided among them, share and share alike, sub-
ject (in the language of the will) "only to the payment of all
just claims against me on note or book account, funeral
charges, testamentary and incidental expenses, and commis-
sions." The testator appointed two of his daughters and his
son-in-law, to execute his will. They, together with the other
daughters of the testator, have filed this their bill against
the two grandsons, who are infants, and who appear and
defend by their guardian.

The testator left one specialty debt due on a bond given
by him to his daughter-in-law, the principal of which was
$5000. The daughter-in-law refused to comply with the
proviso upon which the devise was made to her of the Biddle
farm. The devise to her, therefore, did not take effect, and
this debt which she refused to release, must be paid out of
the estate. The other debts were very considerable. All
the personal assets have been appropriated to pay the simple
contract debts, of which there still remains a large amount
unpaid. See further, for statement of case, the opinion of the
Chancellor. 2 *Stockt.* 387.

*Mr. P. D. Vroom* and *Mr. Browning,* for appellants.

*Mr. Carpenter* and *Mr. Wilson,* for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.    The question is, what part of the property of the testator is to be held liable for the payment of the remaining simple contract debts, and the specialty debt referred to in the preceding state of the case.

The property undisposed of, is the interest in the Biddle farm, being a term of years intervening between the testator's death and the twenty-fifth day of March, immediately preceding the coming of age of James Shreve, the testator's grandson; the specific legacy to the testator's widow, of the plate, furniture, &c., the devise to the grandsons, and the devise to the four daughters.

The term in the Biddle farm has now expired, and has produced, in rents, the sum of $4350, which is in the hands of the executors.    The principal question discussed was as to the legal appropriation of this fund.

This term in the Biddle farm was given by the testator to his daughter-in-law.    Its duration would have been four years.    The farm itself was devised to her two sons, and they were directed to pay to their mother, during her widowhood, an annuity of two hundred dollars.    But both the term of years and the annuity, were made to depend on the condition that she would, within three months after the decease of the testator, execute a release of the money due on her bond.    This release she refused to execute, and as the term of years therefore could not pass to her, and as it was not further disposed of by express direction in the will, its appropriation is to be settled by the court, in accordance with the rules of law.    This will be, then, the first subject of inquiry.

In the debate before this court, it was urged by the counsel of the appellants, that although the interest in the Biddle farm failed to pass to the daughter-in-law on her refusal to comply with the specified condition, yet, nevertheless, it was, in equity, to be considered as specially set aside and appropriated to the payment of the bond before mentioned.    This argument was sought to be upheld on the ground that such appeared, in the will, to be the design of the testator.    There

can be no doubt that the testator supposed that the provision made by him for his daughter-in-law and her sons, would be accepted by her, and that, consequently, the debt due to her would be discharged. But the difficulty is, that the payment, in the only mode provided, has been defeated by a circumstance apparently not contemplated by the testator, and against which he has, therefore, made no provision. There does not seem to be the least indication in the will, that in the event of the refusal of the daughter-in-law to accept the gift on the proffered terms, either the land or the term should be charged with the bond debt. It is true that we are to look at this as a question of intention in the testator, but the intention is not to be conjectured arbitrarily; it must be found in the express words, or be the fair deduction from the words of the will itself. But it is difficult to ascribe to the testator, the intention now suggested. The consideration for the relinquishment of the debt was not only the term in the farm, but an annuity of $200. How could he have supposed this arrangement would take effect, if the daughter-in-law refused to accept the terms? It then obviously became impracticable. The annuity, during widowhood, could not be paid, and where is the intention to be found in the will, to substitute, in lieu of it, a sum in gross? The court is asked to require the devisees of the farm to pay, instead of the annuity, a sum exceeding two thousand dollars. It is not necessary to pause to consider whether such plan would be equitable or otherwise; it is enough to say that such plan cannot be found in the will. Indeed, from the absence of all provision on the subject, it is evident that the emergency which has occurred, did not present itself to the mind of the testator.

The principle of the decisions cited in support of the theory that the debt was a charge on the land, does not in my opinion apply to the case. Those decisions belong to a class of cases which establish the doctrine, that when real estate is devised on condition that the devisee shall pay a third person a certain sum, such person has the right to look

to the land for the payment of the bequest, although the devisee refuse to accept the devise.   In such dispositions, it is obvious that the gift to the legatee in the form of a charge, is independent of the gift to the devisee, and it is not surprising that the courts have protected the interest of each, and held that the legatee cannot be defeated by the act of the devisee, but may follow the land into the hands of the heir-at-law, who will be considered a trustee for him.   Such was the principle in *Wigg* v. *Wigg*, 1 *Atk.* 382; *Birdsall* v. *Hewlett*, 1 *Paige* 32.

On this point of the case, therefore, I concur in the opinion of the Chancellor, that on the refusal of the daughter-in-law to receive the term on the imposed condition, it passed, by force of the residuary clause, to the testator's four daughters. It was not denied on the argument that this would be the result, on the rejection of the theory of a special appropriation of this interest to the payment of the debt due on the bond.

This term then having lapsed into the residuum, the question arises, what is to be its ultimate disposition?   The Chancellor treated it as a devise of land to the four daughters, the residuary legatees, and holding that the general direction in the will to his executors to pay off and discharge all his debts, charged his whole estate with the debts, he directed this devise of the term to be placed, so far as relates to the simple contract debts, on a level with the specific legacy to the widow and the other devisees.   By the express language of the residuary clause, the residuum was to be liable only to the simple contract debts, consequently, the lapsed term was considered to be not subjected to any part of the bond debt.

I am unable to concur in this view.   It rests upon the ground that the testamentary gift of the term for years is strictly a devise of land, which, upon general principles, is specific, even when given to the residuary legatee.   But I am at a loss to perceive how this mere chattel real is to be considered, in its technical sense, as the subject of a devise.   The point appears not to have been discussed in the court below,

and is assumed in the opinion, without comment or explanation. Most clearly, if the daughter-in-law had accepted the term, it would have been a mere chattel interest in her hands, and upon her death it would have been transmitted, if unspent, to her personal representatives and not to her heirs-at-law. Its lapse into the residuum cannot affect its essential character. Such interest in lands has always, so far as I know, been treated as a part of the personalty. From the earliest times, long anterior to the epoch when the right to devise lands was given by statute, these terms for years, considered as chattels, were held to be the subjects of testamentary disposition. Wentworth speaks of them in the following language : " the chattels, real or personal, to which the executor becomes entitled after the death of the testator by force of a condition, will be assets ; as where *a lease for years*, or cattle, plate, or other chattel, was granted by the testator, upon condition that if the grantee did not pay such a sum of money, or do other acts, &c., and this condition is broken or not performed after the testator's death, the chattel will be brought back to the executor, and be assets." *Went. on Ex'rs* 181 ; 2 *Williams on Ex'rs* 1498.

If this is the correct theory, the disposition which has been made of the interest in question is clearly erroneous. As simple personalty, it cannot rank with the specific gifts to legatees and devisees. Itself a chattel, it becomes, together with the other parts of the residue of the personal estate, the primary fund for the payment of the simple contract debts. The established rule is that the residuary legatee, as such, is never entitled to call upon either the general or special legatees or devisees for contribution in favor of creditors. As far as he is concerned it is, in the absence of all contrary indication in the will, conclusively presumed to be the intention of the testator, that he is to have the residue of the estate, if any, after debts and legacies paid. 1 *Roper on Leg.* 309, 357 ; *Page* v. *Leapingwell*, 18 *Ves.* 463.

This residuary fund is charged with the simple contract debts by the testator. The residue and remainder of the

estate, which includes all the real and personal property un-disposed of; is equally divided amongst the four daughters, subject only to the simple contract debts. The burden, then, being imposed on the whole residue, when the term fell in, it became subject to its share of the onus.

My conclusion, therefore, on this point of the case is, that the term of years in the Biddle farm, being incorporated as personalty with the residue of the estate, became thereby primarily subject to the simple contract debts, and that the moneys representing such interest, now in the hands of the executors, should be appropriated for that purpose, before contribution is exacted from the specific legacy or the devises. The surplus of the fund, as it cannot be made to assist in the payment of the specialty debt by reason of its express exemption in the will, must pass to the residuary legatees.

The remaining question is with regard to the payment of the debt due on the bond. This has been directed to be paid out of the specific legacy to the widow and the lands devised. The Chancellor justifies this order, on the ground that the testator has charged the whole of the estate, both real and personal, with the debts. The language of the will is: "Imprimis: I authorize and direct my executors, hereinafter named, to pay off and discharge all my just debts and funeral charges, as soon as conveniently can be done after my decease."

The cases certainly establish the doctrine that a general direction by a testator that his debts shall be paid, will effectually charge them upon the real estate. To this effect are both the ancient and modern authorities. 1 *Vern.* 45; *S. C.,* 1 *Eq. Cases Abridg.* 197; 2 *Jarman on Wills* 870; 2 *White & Tudor's L. C. in Eq.* 297.

But there is an exception to this rule, within which this case appears to fall; it is, that where the direction to pay debts is given to the *executors*, the lands will not be charged. The presumption then is, that the payment is to be made exclusively out of the funds which by law devolve to the executors in their representative capacity. In this case the direction is expressly to the executors to pay the debts, and as the exception seems to be as well established as the rule

itself, the lands are not charged by such direction. 2 *Jarman on Wills* 523; 2 *White & Tudor's L. C. in Eq.* 298.

But while I cannot concur in the principle on which the specialty debt has been imposed in this case on the specific legacy and devises, I have come, on another ground, to the same result.

In the absence of any express charge by the will upon the lands devised, a specialty debt, *proprio vigore*, is a burden upon them to the same extent as it is upon a specific legacy. The general principle is that, on a failure of personal assets, the specific legacies and devises must abate equably in payment of creditors. This rule seems not unreasonable, and is founded in the presumed intention of the testator. As the devise and the legacy are both specific, the law deduces the fair conclusion that it was not the purpose of the testator to prefer the one to the other, and that, as they possess an equality of right, their burden should be equal. The specialty creditor can look to the land as well as the personal assets, and there seems to be no reason why, in regard to this class of debts, the one kind of property should have an immunity which the other does not possess. The leading case on this head is that of *Long* v. *Short*, 1 *P. Wms.* 403. The point was also elaborately discussed, and the doctrine maintained by Vice Chancellor Bruce, in the case of *Tombs* v. *Roch*, 2 *Coll.* 490.

I think the decree in the Court of Chancery has properly marshaled the assets for the payment of the specialty debt.

On the other point the decree should be reversed, and the case remitted with the requisite instructions.

The decree was reversed in part, as above, by the following vote:

*For reversal*—BEASLEY, C. J., CORNELISON, ELMER, FORT, HAINES, KENNEDY, OGDEN, VAN DYKE, VREDENBURGH, WOOD. 10.

*For affirmance*—CLEMENT.